Next case of the morning is number 2460610, Jue v. Dobbins. Mr. Butler Morning, Your Honor. In the district court, my client challenged the complaint on both HECC and qualified immunity grounds and Judge Reeves denied that motion. In doing so, he rejected the HECC argument without prejudice and he refused to address QI at all. We ask this court to reverse that order. I'll start with the sequencing issue. Once raised, a district court does not get to skip over QI. He's got to give a thumbs up or thumbs down ruling on qualified immunity and can't carry that issue along with the case. The reason, of course, is because immunity is not just protection from liability, but protection from all of the burdens of litigation as well. That's not to say that Judge Reeves could not have resolved most of this case on HECC grounds. He could have and he should have, but HECC was never going to do all of the work in the case because of the excessive force claim. So regardless of what Judge Reeves thought about my HECC argument, he always would eventually have to get to QI because of excessive force, but he could have and he should have resolved most of this case on HECC and that's because of the plaintiff's own pleadings. Under this court's decision in Hoog-Watson, it makes clear that a plaintiff can plead themselves out of court on HECC grounds and that's exactly what the plaintiff did in this case. She pled what Hoog-Watson calls a HECC-triggering fact, which is, quote, the existence of a criminal proceeding, and then she did not also plead what is called a HECC-saving fact, which would be a favorable termination. Quite different from that, she attached a criminal record to the complaint that said she'd been found guilty and she put an allegation in the complaint that she spoke to a municipal court employee who confirmed that she had been found guilty. Before you go there, given the argument you started with, because the district court didn't opine on the HECC issues, why is this appealable to us? I mean, why isn't this a matter that needs to go back to the district court, for the district court in the first instance, to make the very determinations that you're opining? That he should have made. In other words, we don't have a final, quote, judgment, if you will, on those very doctrines that you're saying, so assuming that to be true, there's no finality here, so why are we, in this instance, sort of parsing HECC at this juncture along with the other issues here? That may not be time-efficient, but finality is what we drive on, right, us having a final determination. Then, of course, you and the counsel officer will be making your arguments plus or minus about its vitality, but we at least know what the district court's determinations on HECC were. Right. Your Honor, I take that point, but we know, of course, from Frederick v. LeBlanc, where this court synthesized all its HECC cases, that HECC is an immediately-appellable issue under the collateral order doctrine, just like qualified immunity is, and in the first . . . Well, it is. I don't quarrel with you there, but 101 is finality, right? I mean, I don't quarrel with you in terms of, you know, that coming up here, but 101 is that there is some finality, there is a ruling that's been made, as opposed to waiting until you're appealed, you know, to then bring it up and argue it and all that. You get collateral order, come on up. We're open for business, but primarily we say, you know, there needs to be a judgment. Why do you get to skip first base and come on around to second? Well, Your Honor, I don't think we skipped anything. I think in the first paragraph of Judge Reeve's order, he says that this motion is denied, and under this court's precedent, a denial is immediately appellable, just like it would be in the QI context. And so, especially when a HECC issue is joined with a qualified immunity issue, and the district judge tells the party, you've got to go back and do something else, then that is exactly the type of litigation burdens that this court said district courts aren't allowed to do. So this is a— I think the point is that the court wasn't—what am I trying to say? You weren't required to appeal when he denied without prejudice and stayed the case. You weren't required to appeal, but under Mitchell v. Forsythe, dismissal on the pleading or not dismissing on the pleadings is a collateral order that you're enabled to appeal. Right. I wasn't required to, but I was allowed to, and it's a pure question of law. The pleadings are what they are, and that is exactly what Hoog Watson is all about. You know, it gives us the framework for how we're supposed to evaluate whether a plaintiff has, quote, pleaded themselves out of court under HECC. How has she pleaded herself out of court under HECC if she is alleging that she never was charged, that there's an arrest report that reflects certain information, but she was never given notice? Why hasn't she sufficiently pled that she hasn't been convicted of anything, and therefore HECC doesn't apply? Your Honor, she acknowledges the conviction in the complaint and calls it a, quote, fictitious one. My friend complains of a variety of different procedural irregularities ranging from, as you mentioned, failure to get notice and different discrepancies in documents, but those are precisely . . . Where is anything in the record that says conviction, adjudication, or words that have been . . . The criminal record that was attached to the plaintiff's complaint says that she was found guilty in her absence, and that was attached to the plaintiff's complaint, and that she also pled that a municipal court employee . . . Where's the minute entry, if you will? Where's the minute entry from which there was a proceeding for anything in which she was to have been present, for which she was absent, for which a default, whatever, occurred? I mean, where is any of that? There is not a minute entry in the record, Your Honor, and that's the type of procedural deficiency that we're saying has to be lodged in state court and not federal court. I would point the court to this court's decision in Madden. The essence of heck is to say that somebody is attempting to come in and traverse a conviction, to traverse it. Well, definitionally, there needs to be a conviction, and so because somebody says it, doesn't make it so. I mean, even in the most base municipal village court, there's something that says that, okay, this happened, and so I'm just asking, I could have missed it, but I'm just trying to figure out back to basics. Right, Your Honor, and that's what I would ask the court to look at the exhibits that were attached to the plaintiff's complaint. I'm looking at the exhibits. It says criminal record. It says arrest report. Arrest report's not a charging document, neither is a criminal record. You've analogized this to a ticket. If you get pulled over for speeding, the officer writes you a citation. You've signed for it. On the back, it says you can either plead guilty or no contest and pay your fine, or you can go to court by this date. Do you have any authority that says your arrest report or criminal record is the same as a charging document? You know, apart from the conviction, where's your charging document that was given to her? Couple of responses to that, Your Honor. One, this idea about arrest report, the document that was attached to the complaint, that comes from an electronic computer database that municipalities all around the country use. It's called the LEAP system, and it's a shared computer database between municipal courts and police departments, and so what she's referring to as an arrest record right there on the top of the complaint says criminal record, and she again confirms that that was told to her by a municipal court employee. On the issue about the payment of a fine and the ticket, I'll be the first to say I've had far more traffic tickets than I care to admit, and I can't say I've ever shown up in a municipal court and actually appeared before a judge. That's what generally happens is somebody, you know, pays a fine to avoid having to go to court, and that is exactly what the plaintiff pled. But don't you have to sign something and pay the fine? In other words, you get the citation, you sign for the citation, and you return the citation by checking the box that says, I'm going to pay the fine and not go to court. I've never paid, I've never signed anything, Your Honor. Does, I mean, it's possible the Mississippi law is different from Texas or Louisiana law. Yeah, and in my experience, I've never paid, I've never signed any document. I mean, what generally happens is the individual— So there's somebody, how much you owe, and you just pay? Generally, I call over the phone, and I pay by credit card over the phone, has been my experience, or either they tell you go to this website, and you— Well, I'm speeding enough that, you know, it's sufficient for—never mind. This is not a personal, you know, we are not talking about our personal experiences here. Isn't there something in the record about the fact that she was adjudicated in her absence? It is, Your Honor, and that also appears on the whole document that she attached to the  I think that's important, because that's a good way to reconcile both questions, right? Is, on the one hand, she specifically pleads in her complaint that it was a fine, right? She says it was a fine. She says it was not a bond that was forfeited. She says it was a fine. And if you take that as true, if she paid a fine in exchange for resolving criminal charges, that is exactly what heck is all about. But that's not the—my saying I did X is not the same as your municipality that says I did it. That's where the evidence of what I did not—I paid some money. They told me to tow a truck, et cetera, et cetera. I sent the money. That's not self-authenticating or self-proving about the adjudication. Your Honor, we're here on a motion for judgment on the pleading. I understand. And she— That's where I started my question. Right, and she pled I was arrested. She pled I was charged with these two crimes, and she pled I paid $1,200-and-some-odd to resolve my criminal charges. Well, and then the rest of the story is, after spending the night in jail and paying the money, which her sister paid, then they said, we're going to give you a court date. And then she said, I have COVID. I can't show up for court. And then at some point later, she follows up, does she not? And she's told that she's been adjudicated—I mean, this is in the pleading. Exactly, Your Honor. She's been adjudicated. I don't know what—is there a document about that? There's a lot. Found guilty in absentia. There is, Your Honor. And it says that the $1,200 she paid was forfeited. Was the fine? And that was the fine. And that's sort of my point, is that— Well, where's that document? It was attached to the complaint, Your Honor. So it— Doesn't she plead that the documents say she paid a fine? She doesn't agree with that. She was told it was a bond. That's the opposite, Your Honor. She says that I was told it was a fine, that I had to pay my fine to get out of jail. If you look at the documents, the actual court documents are what say—says it was forfeited in her absence. So my point is, you're in a catch-22 situation at that point. If you take the plaintiff at her word, at her allegations, and she says, I paid a fine, albeit coerced. I paid a fine to resolve my criminal charges, and I've never been returned that money, that's a heck problem. If instead you look behind her allegations, and you look to the documents she herself attached to the complaint that says it was forfeited in her absence, that in and of itself is a resolution as well. So whichever documents you look at, whether her own allegations or the documents attached there too, there's a heck problem either way. And this—that is what heck is all about, is to screen out these type of claims. If somebody says, I was coerced into paying this fine that I shouldn't have been, I didn't get a court date. Nobody gave me notice. That's what heck says, is you're supposed to go to state court, and you're supposed to challenge it. She could have gone to municipal court. She could have appealed to a Mississippi circuit court, but she didn't do that. She instead hired the ACLU two years later to file a civil rights lawsuit for monetary damages, and she requested attorney's fees. And it would be hard to find a better example than this court's recent en banc decision in Wilson v. Midland County, where the plaintiff alleged that her own prosecutor was moonlighting as the judge's law clerk. It would be difficult to fathom a more egregious due process allegation than that. It would be hard pressed to find a more egregious human rights process than this municipality that's sucking people with all these fees and so on and so forth about which there was notoriety. So now if we're going to go down that lane, you know, that's not part of the case. But let's be for real, this case doesn't arise in a vacuum in terms of what was going on in Mississippi as far as people were pulled in, the traffic tickets, et cetera. That's beyond maybe what happened to this lady. But let's not go down some road about calling Wilson. That's not the same thing. It's not. Well, excuse me, but we're dealing with specific facts here. We're not dealing with some condemnation of a particular town. We have specific facts that there was a call in to the police station that this woman had blocked a gas pump for 45 minutes and that the proprietor had called the police and said she would not leave. And that gave the police probable cause to go and at least oust her for trespass. Now, that's part of the qualified immunity if we get to it. Well, I'm clear about the facts on this case. I still stand to say Counsel argued Wilson, a case decided by the court, to make a point. And I push back on that if you're going to go into the contours of that case, which are not the facts here, that isn't germane to what you've iterated in this case. That's my point. But, Your Honor, the principle that underscored the case is the same. The principle is that even if you accept all of the allegations and characterizations about this city that I very much do not accept, the proper determination, the proper lane to challenge those type of things was in state court. The Mississippi Supreme Court is equally able to interpret its state laws and determine whether those things that have been alleged are true or not. So my point is different. That's a fair point. I don't push back on you on that at all. That's a fair point. That's a fair, fair point. Except that Irma Wilson had a judgment of conviction from which she could have sought relief at the state level. We don't have that here. Well, I think that, again, we're here. Found guilty in her absence on the date of December 30, 2021. Is that right? That's exactly right, Your Honor. She could have appealed. The plaintiff doesn't contest that there was a conviction. She calls it a fictitious one. She acknowledges that she was charged, that she paid a fine in result. She said, I didn't get noticed. She said, there's clerical errors. She said, I got railroaded. My point is only that there's a proper avenue to challenge those things, and it's not a 1983 lawsuit. Well, I'm not sure I agree that she pleaded that she paid a fine. She put the word fine in quotation marks throughout her complaint. She alleged she was told it was a fine that she had to pay to get out of jail. But you would agree, wouldn't you, that there are some irregularities here that make it difficult to determine the charging document, the judgment of conviction. All we have is a printout from a computer that says things that somebody put in. We don't have independent documents of that. I certainly agree with Your Honor that procedural irregularities have been alleged. And I would say just like in the Wilson case, the proper avenue to make, to challenge those procedural irregularity was the Mississippi State court system because they should have the first opportunity to interpret their own laws. Thank you, Your Honor. All right, you have time for rebuttal. And by the way, since you didn't have an opportunity to deal with qualified immunity, you can address that on rebuttal if it's appropriate. Thank you, Your Honor. Ms. Hutton. You have anything to say? Good morning, Your Honor. And may it please the court, Martha Hutton for aptly Alexis Jew. The district court's stay order here didn't decide any issue in this case, so it isn't an appealable order and there isn't jurisdiction over this appeal. Appellants nonetheless try to leverage their disagreement with that order into review by this court of a raft of issues that the district court has not reached. So if this court finds it does have jurisdiction over the appeal, it should remand the matter to the district court to make those determinations in the first instance. If the court instead elects to reach the merits, let me be plain. Ms. Jew more than plausibly pleads that this is a case where the heck bar has no role. There is no chance her federal claims here can impugn any state conviction because there is no conviction. Well, Ms. Hutton, if that's the case and there was no justification for a stay order. Your Honor, if that's the court's determination in a remand to vacate the stay order. Is that, I mean, are you conceding that? Your Honor, we would say much of the district court's order recognized the irregularities here amounted to no conviction under Mississippi law, which means no heck bar. So you don't think a stay was necessary? The proper result would have been to deny the 12C motions on the heck grounds. Well, then, and that may well be the case. Your Honor, we would agree that heck does not bar this claim, especially on the pleadings at the 12C stage. There's been more than adequately pled here. Of course, I didn't say I agree with that. But on the other hand, what I do think is that your entire argument is contrary to the order that the district court entered, which you now say is not appealable. Your Honor, we do think the stay order is not a final appealable order. And I've heard it characterized as a denial or a refusal. This case hasn't proceeded past the pleadings in the district court. So any analogy to cases where discovery was granted, for example, while a qualified immunity decision had not been rendered is not apt here. Yes, but you know it is well established in this court that defendants have the right to appeal at the earliest juncture on the courts. In fact, there's even been a case, which I sat on some 30 years ago, where the court was refusing to rule on qualified immunity and we took jurisdiction and decided the merits. So the defendant can appeal three times. They can appeal a dismissal on the merits. They can appeal adverse summary judgment. They can appeal refusals to rule until late in the, I mean, that's the law. Your Honor, if I could address that concern on two points. First, there is also jurisprudence specifically permitting a stay here while a potential HECBAR state matter is proceeding. We don't agree the state matter is still proceeding, but the district court stay order falls well within that jurisprudence from Mackey and from the Supreme Court's Wallace case. So that would be in conflict with some broader rule that QI had to be decided before HEC. Second, to the extent that an ongoing long-term process of not ruling on a qualified immunity claim at all could be a defeat of the right to have that defense adjudicated promptly, as this court has many times held, that's not this case. This isn't, for example, the Carswell case where there was, the defendants were ordered to answer before they got, or there were depositions. And it's not a case where there have been years and years where the defendants are awaiting or under the threat or pressure. I'm sorry, but we don't judge the, quote, equities behind the situation if the defendants might lose on an appeal on dismissal. But the point is that, their point is, whoever drafted the complaint here put all the information in on which defendants can rely, which start off with what triggered these events. And that was a call into the police, unless you're saying that was false, and you have some basis for saying so. Your Honor, we do allege that arrest report is contradictory, it's unreliable, and it's fictitious. That's in the complaint. And there are multiple indicia on the face of it that support those allegations. And what Ms. Ju plausibly pleads happened on that day is inconsistent with the narrative portion in that arrest report. And those inconsistencies of the 12C motion, if they're, they both mean the arrest report can't just defeat her pleadings. And if there is some tension, they go in Ms. Ju's favor at the Rule 12C stage. And so that is how the arrest report kind of sequence of events should be evaluated. Unfortunately, the judge didn't bother to talk about that, did he? Your Honor, I don't recall a specific analysis. Well, I think he said, I can't, he was saying, I can't decide heck unless I know whether there was a real conviction or not. Your Honor, there's more than enough in the pleadings to determine this is not a conviction that triggers heck. And I want to turn to a fact that was discussed with my friend, the absence of any record of judgment in the municipal docket book. It's dispositive here. That's where the conviction must be. And in the footnote in their brief, and again today, they've admitted it's not there. This never played out in a way that is a proper state procedure that heck is meant to protect from impugning federal claims. There's no conviction. The idea that she could be judged guilty. Then there's no ground for stay. And then we have to reach qualified immunity. Your Honor, we don't agree that this court should decide qualified immunity in the first instance. If it determines that that should be reached despite the district court's uncertainty or errors on heck, then the proper course would be to remand for that determination. Ms. Hutton, what happens when a person who is charged with a criminal offense files a 1983 lawsuit before conviction? In other words, there's ongoing criminal proceedings, but the charged defendant perhaps files a 1983 claim asserting excessive force during the arrest. What happens to that 1983 proceeding while the criminal case is going through the state system? Your Honor, it could be stayed, and that's the Mackey case and the Wallace case. Or there is also precedent under, I think, the Cook v. Tyler case that that could be dismissed with prejudice to being reasserted until the heck conditions are met. And that goes back to the McElveen case. We don't think that it makes sense here. Nobody is asserting that proceedings are still ongoing. Correct. Those are two well-trod paths that could be taken here. Correct. But it's not uncommon for a federal court to stay a 1983 proceeding pending the outcome of the state criminal proceedings or determination of guilt or innocence, correct? It's well established under the circuit's precedent that that's permissible. Is the process that the district court followed here analogous in staying to determine whether there is, in fact, a conviction? Yes, I would say that's analogous. And it is analogous both in the state of affairs at the district court, where there's no present discovery or similar burdens upon defendants. Except for the fact that the defendants have the right to require a ruling on motion to dismiss for qualified immunity, which stands separate and apart from any stay for heck. Your Honor, reconciling those two competing rights or processes and rights, I think, is the Cook case, where even though there the defendants appealed, even though there had been a dismissal of the action pending heck, so one step further than what we've got here on a stay, and that was, they were not allowed to prevail there because balancing these two preliminary tasks and competing concerns is something the district court is unable to do in docket management. They're both preliminary matters. I'll also note that below, the defendants raised heck first. Contrary to what Mr. Butler said. Oh, so now we go with who raises what first when the order says, before the court are the motions for judgment on the pleadings. The court is not, two motions. The motions are fully briefed and ready for adjudication. The motions will be denied without prejudice. Denied. And this matter stayed. Your Honor, below, my client will have to get that stay lifted to proceed with her civil rights action. I think the more interesting thing is, well, no. I mean, the court is telling you all to get some documents or something, which you say don't exist anyway, but it seems to me that what is before us has no claim to entitled either heck or qualified immunity to priority. It's just like the Supreme Court in the Steele case with various grounds for dismissal. Your Honor, if the court finds that the district court should have ruled on either or both, then it should remand with instructions to do so. And we're confident the misused pleadings will survive both challenges. What about the recent case by Judge Jordan in a similar claim? Your Honor, is that the lower court case that they've, Russell? Yeah. Is that, I did notice that discussed in the reply brief and happy to address it here. It is not similar in the same sense that the adjudication there went far beyond what is alleged here. And there, and I don't mean to, I think that case is still ongoing, but my understanding is that the judge's decision looked at a fact pattern where the individual both paid a fine and bail in the same proceeding. Two separate distinct amounts of money. Ms. Ju says, I was never allowed to get bail. I was never brought before a judge to be arraigned. The point is he ruled for the defendants in Lexington under very similar circumstances, right? I dispute they're similar under the key measures here. First, if it is about was there a civil rights violation in the interaction between these officers and my client, Ms. Ju, that's going to be a different analysis, a different set of facts than the individuals who brought that claim. Second, as to that HEC determination, which was discussed in the briefs, the facts are also very different. And I would say if I had to pick one most important fact, there's a judge in that case. The individual is being assigned bail, I think $80,000, and a fine separately. So there's several more steps, and there's a distinction of what the money is made. We don't have those here. We have the absence of a record of conviction, and we have the absence of... This is attached to her complaint. Yes, Your Honor. And even if this is pulled up from somewhere else, I mean, this is in a national database, right? I don't know if it's in a national database or not, Your Honor. Well, it's in some kind of database. Well, the plaintiff generated the record, so you're responsible for the plaintiff under Rule 11, at least, alleging that this is accurate. Your Honor, we received these materials through records request, and this was not provided to Ms. Ju. Well, I don't care where you received it. You put it in your... Yes, Your Honor. You're vouching for it. And we put it in, and what it establishes is there is no conviction here. So to address the concerns about that, the irregularities here... First, it just can't be a conviction. It's not in the docketbook. Second, the irregularities here should really undermine any sense that this is in lieu of what Mississippi law has said must be there for a conviction, which is something in the record. This says that she was found guilty in her absence. You can't do that in Mississippi. That's not a procedure. Even the traffic tickets that were discussed, you get more process for traffic tickets. That's 99-19-3-2 Mississippi Code. That's the only way you get out of 99-19-3-1 convictions is traffic tickets. So how come you didn't persuade Judge Reeves to deny a heck bar? Your Honor, Judge Reeves found many things we think accurate about the arguments that have been advanced here, and the conclusion is now stayed. We will have to lift that state of proceed. I don't know why the disconnect between the findings and the relief. We do think we would be entitled to defeat the heck bar claims here. But you certainly filed a full response when they moved for judgment on the pleadings, right? Yes. Of course you did. All right. And I'll also just address, since the arrest reports come up, just many irregularities that there's a disposition to be continued. It's not signed. There's a lot here that's not right, frankly, to make this some kind of binding document. And it wasn't provided to Ms. Jew. She pleaded she never had notice of that alleged hearing on the 30th. There really was a kind of post hoc effort. That's what the pleadings allege. And the report itself confirms that. If the report didn't confirm that here at the pleading stage under the Pena case, they would not supersede Ms. Jew's well-pleaded allegations anyways. And so I'd like to also address the assertion that was discussed that Ms. Jew could have gone to state court to get relief from this disposition. And I can't say conviction. I can't say adjudication. Because there wasn't a judge that she was ever brought before for either her arraignment or for some kind of plea. And there's not a conviction that meets any of the requirements under Mississippi's code or criminal procedure. But this process, to go to state court, you need that disposition. You need that conviction to attach an arrest report saying some judge I never saw on a date I never heard about found I was guilty in absence and that I had gotten a bond, which I was told I never would pay. Attaching, I think, is you have to appeal from an entry of a judgment. There's no judgment here. I'm sorry. Most courts of appeals are able to understand these kinds of things if what you're saying is accurate. Your Honor, we dispute that this would be able to be accepted as an appeal because there's no judgment. And that's what— Well, isn't that—I mean, that's all right, fine. The whole Mississippi system is conspiring against you. Your Honor, I don't think that is a necessary determination here to find that what happened here isn't a conviction. Because these things do matter. Mississippi does define convictions and requires either as a plea or as an analogy to a nullo contendere. There are still requirements for each of those types of convictions to occur. They weren't met here. And I think that's very important to say that this is analogous to the kinds of— So the bottom line here is—and I'm sorry to take up your time, but I think we have to—we have to cut to the chase. You are not defending the district court. Most of your argument here, and maybe you can blame me for it and say that I'm trying to do it wrong, but most of your argument has been there is no heck bar because there is no conviction. That is a primary— And if that's the case, then the court must equally take up qualified immunity. I think—I mean, I just think you're stuck. It would have been one thing if you were really defending what the district court did in issuing a stay, but nothing that you have said here— My recollection, the first words out of counsel's mouth is that there's no final judgment. There's no appealable order, and this court doesn't have jurisdiction. That's the first thing that was heard, that the dismissal was sent back to the district court before we went into the remainder. Now, the record will bear out, but I recall you argued straight out that there was no appealable judgment. This court doesn't have jurisdiction or dismissal. Well, if that was— If I'm wrong, then, counsel, you're on the mic. Your Honor, our primary argument is there's not jurisdiction over this appeal. That's correct. As appellee, we have attempted to answer the arguments asserted in the appellant's brief today regarding if the court does accept jurisdiction, how the issues that are raised in their brief should resolve in favor of my client at each step. And so I want to be clear that is our position. Our primary position is no jurisdiction. If the issues are entertained, they come out in favor of misused positions.  Can you cite any other recent cases in the Fifth Circuit where, and I certainly take Judge Stewart's position, I mean, I appreciate that. Any recent cases in the Fifth Circuit where a district court confronted with a motion for judgment on the pleadings on the basis of qualified immunity, declined to rule, and this court dismissed for lack of jurisdiction? Your Honor, I'm not aware that this— Well, you might look them up after argument today, and if there are any cases, I'd be very interested in seeing them. We would be happy to do that, Your Honor. I think it is so unusual to have an appeal out of this type of order that there might not be that instance, but I would refer the court potentially to the Gates case, which discussed a stay pending HEC that appeared to have lasted 10 years. We certainly hope that is not going to happen here to Ms. Jew's case, but it evinces the widespread acceptance that that is something that can occur without needing to be reviewed on an immediate interlocutory appeal. So I would make that reference also to the Mackey case as reflecting this kind of well-established practice. I'm going to make one final note that, Your Honor, if there are no further questions, I will be concluded. Okay. Thank you very much. Mr. Butler. Thank you, Your Honor. Just briefly, Judge Ramirez, I'll start with your question just about the order of operations and whether it's uncommon to stay, you know, for HEC-related reasons. What I would say to that is it's not uncommon if there are criminal proceedings that have not been resolved, but my friend on the other side just got up here and said that she thought it had been resolved, that there was no conviction. We certainly disagree with that, but that's not the type of issue that a HEC stay would result in, and it's never allowed whenever you join a HEC argument with a qualified immunity argument. If Judge Reeve wanted to agree with our HEC argument, he certainly could have, you know, disposed of the case on that ground, but once we added the QI argument and joined it with HEC, he doesn't get to go back and tell us to do other things. We know that because of the Carswell case, so HEC doesn't trump QI in that regard is what I would say. Well, he didn't deny HEC. It wouldn't if he had denied your motion based on HEC. He stayed the case. Could he possibly have stayed the case to allow the parties to explore whether there truly is a conviction? No, Your Honor. He did deny it. He said he denied it, and he required us to go do other things, which is exactly what you can't do in the QI context, so once HEC and QI were joined at the hip, he doesn't get to go put burdens of litigation on us. That's what QI says you're not allowed to do, so that's sort of my point on that one. Well, I take your point, but this was a 12C motion. Many times HEC questions aren't determined on either a 12B6 or a 12, which is the applicable standard for 12C. You wait until summary judgment. And he should have denied my motion, and I may be here on that ground, or he could have granted it and said, you know, plaintiff, go plead a better case. He could have done those things, perhaps, and then we could have decided where that left the parties, but he doesn't get to go put litigation burdens on us once QI is raised. I think that's my central point there, and then, Judge Stewart, to your point about jurisdiction, there is no doubt there's jurisdiction. There's appellate jurisdiction once he denies that motion. Now, the question then is, well, what do you do in a ruling? Could you send the case back and say, well, you didn't do the analysis right. This is how you have to do the analysis. But that's different from saying there's not jurisdiction under the collateral order doctrine. Once there's denial, there certainly is jurisdiction, and then you have to, you know, figure out whether this court is going to do the analysis itself, or it would send it back and say, do it a different way. Another central point here, all this stuff about I didn't get a court date, the plaintiff admits in her complaint that she did get a court date. She showed up in court and got a continuance because she had COVID. So, to suggest that these are some kind of sham municipal court proceedings and there really was no judge and there really was no courthouse, she showed up and she asked for a continuance and she got one. And so, we know that from the complaint. On this point about the minute entry, I would again refer the court back to Judge Jordan's opinion in Russell. That also was a motion for judgment on the pleadings. No mention of any kind of minute entry proceeding in that case as well. It was the same issue where the plaintiff pledged she paid a fine and Judge Jordan ruled that that is a criminal penalty and if it's not returned, that's a heck issue. I also would mention this court's decision in Madden earlier this year. That is another heck case where an individual said, well, there's procedural problems with the minute entry of convictions under state law. And this court said those type of clerical errors aren't sufficient to overcome heck. So, I think that's a good case to look at as well. Briefly on the QI with my remaining time, the plaintiff can talk about inconsistencies in the municipal court documents. But what I would say is there's inconsistencies with the allegations in the complaint and that video that she referred to and was incorporated through the 12C motion. On the excessive force claim, which always was going to have to be reached outside of heck, I would just urge the court to watch the video. There's nothing about that video that would suggest there's a plaintiff that was subjected to excessive force in that case. Far from it. She's walking around yelling at everybody in sight and there's no excessive force there. Even if the court were not to agree with my heck argument on the arrest related issues, Judge Jones, I think your decision in Armstrong v. Ashley is what I would point to for incorporation of the police report. Thank you, Your Honors. All right, sir. Thank you.